UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EMORY EDWARD REED, III,** | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| **UNITED STATES PROBATION** | : | |
| **DEPARTMENT,** *et al.*, | : | NO. 18-850 |
| Defendants. | : | |

## MEMORANDUM

**Joseph F. Leeson, Jr.**  APRIL 20, 2018
**United States District Judge**

Emory Edward Reed, III, who is currently incarcerated at the Federal Detention Center in Philadelphia, filed this *pro se* action pursuant to *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), against the United States Probation Department in Reading, Pennsylvania and Probation Officers Carlos Montgomery and Liz Rayez, asserting claims arising from criminal proceedings that occurred in this Court. He has also filed a motion to proceed *in forma pauperis*. For the reasons set forth below, the Court will grant Mr. Reed leave to proceed *in forma pauperis* and will dismiss his Complaint.

**I.  FACTS**

Public dockets reflect that Mr. Reed has been convicted on four (4) separate occasions in this Court. *See United States v. Reed*, Crim. Action No. 03-754 (convicted of one count of conspiracy and one count of aiding and abetting bank robbery); *United States v. Reed*, Crim. Action No. 04-185 (convicted of four counts of bank robbery); *United States v. Reed*, Crim. Action No. 04-468 (convicted of one count of bank robbery); *United States v. Reed*, Crim. Action No. 12-89 (convicted of one count of bank robbery). On December 13, 2017, in Criminal

Action No. 12-89, the Honorable Lawrence F. Stengel issued an Order directing that a warrant be issued for Mr. Reed's arrest and that he be brought before the Court for supervised revocation proceedings. *United States v. Reed*, Crim. Action No. 12-89 (Docket No. 33). The warrant was based upon, *inter alia*, Mr. Reed's arrest for yet another bank robbery. *Id.* Supervised release revocation proceedings are still pending.[1]

In his Complaint, Mr. Reed alleges that in and around November of 2017, he "had many issues that will show failure by the U.S. Probation Department and its Officers that caused the issues to be allowed to take place . . . that have caused [Mr. Reed] to be at a loss of [l]ong term liberty in the near future." (Compl. at 1.) He mentions that he has been on supervised release since August of 2016 due to his mental health and drug addiction issues. (*Id.* at 1-2.) In September of 2017, Mr. Reed lost his job and "started to suffer from both [P]hysical and [m]ental [h]ealth issues." (*Id.*) He began to miss his appointments with NostraClinica, "and was told by the U.S. Probation to continue seeing the clinic for his [m]ental [h]ealth issues." (*Id.* at 2.) Mr. Reed subsequently "made some poor decisions" over the weekend of Labor Day "that caused him both to be arrested and fail a urine test by Probation." (*Id.*) According to Mr. Reed, Probation Officer Montgomery was aware of his actions and "should have taken [him] to a Duel Diagnosis Facility or program to ensure that no further [repercussions] would come from this relapse." (*Id.*)

Mr. Reed contends that because he has been on some form of probation since 1999, "it would have been impossible for the U.S. Probation Department to have full knowledge of what 'not to do,' meaning . . . they should have take[n] swift actions to ensure that both Parties were

---

[1] Since then, Mr. Reed has been charged in this Court for the bank robbery that forms the basis of his revocation proceedings. *See United States v. Reed*, Crim. Action No. 18-78.

protected!" (*Id.*) He alleges that the Court is "able to piece together a pattern by [Mr. Reed] that shows his [m]ental [h]ealth issues are a serious root to all the crimes and causes him to turn to the use of [d]rugs to 'self-medicate' from his [m]ental [h]ealth issues." (*Id.* at 3.) Mr. Reed argues that "the Probation Department has had 'plenty of information' available to them to ensure that [he] would not fall victim to his own demise of [s]elf-[m]edication." (*Id.*) He also believes the Probation Department "had enough information to act appropriately to keep [him] [from] going from one crime to the other." (*Id.*)

Mr. Reed contends that because of "lack of action" by Defendants, he "has suffered many issues, mainly the loss and potential loss of his [l]iberty of [f]reedom due to being permitted to continue on a []reckless path that could have been avoided." (*Id.*) As relief, he seeks that a "special Board be put in place within the Federal Court Systems . . . and that all avenues be exhausted to understand the severity of 'any' defendant prior to that person getting any type of prison sentence." (*Id.* at 5.) He also requests damages in the amount of $750,000.00 to $1,000,000.00. (*Id.* at 6.)

## II. STANDARD OF REVIEW

The Court will grant Mr. Reed leave to proceed *in forma pauperis* because it appears that he is not capable of prepaying the fees to commence this action.[2] Accordingly, 28 U.S.C. 1915(e)(2)(B)(ii) applies to Mr. Reed's Complaint. That statute requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient

---

[2] However, as Mr. Reed is a prisoner subject to the Prison Litigation Reform Act, he will be obligated to pay the filing fee in installments pursuant to 28 U.S.C. § 1915(b).

factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory statements and naked assertions will not suffice. *Id.* The Court may also consider matters of public record. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006). As Mr. Reed is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III. DISCUSSION

Mr. Reed's *Bivens* claims against the Defendants fail for several reasons. First, the United States Probation Department is part of the Administrative Office of the United States Court, and is therefore a federal agency. *See Farrow v. W. District of Pa. Parole and Prob.*, No. 08-0263, 2008 WL 597189, at *2 (W.D. Pa. Mar. 4, 2008). "Absent a waiver, the federal government and its agencies enjoy sovereign immunity." *Id.* (citing *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). Therefore, Mr. Reed cannot maintain a *Bivens* action against the United States Probation Department. *See Meyer*, 510 U.S. at 484-86 (holding that a *Bivens* action cannot be maintained against a federal agency).

Mr. Reed's claims against Officers Montgomery and Rayez also fail. It appears that Mr. Reed seeks to hold the Defendants responsible for failing to act to ensure that he would not commit further crimes. To the extent Mr. Reed is raising a due process claim against the Defendants, the Supreme Court has noted that the Due Process Clause "is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. . . . Its purpose was to protect the people from the State, not to ensure that the State protected them from each other." *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 195-96 (1989). Thus, "the Due Process Clauses generally confer no affirmative right to governmental

aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *Id.* (citations omitted); *see also D.R. v. Middle Bucks Area Vocational Technical Sch.*, 972 F.2d 1364, 1368-69 (3d Cir. 1992) (en banc) (noting that it is a "well-established principle that the Due Process Clause [of the Fifth Amendment] does not impose an affirmative duty upon the state to protect its citizens"). Under this reasoning, Officers Montgomery and Rayez cannot be liable to Mr. Reed for failing to protect him from himself. It was Mr. Reed's own actions, not the alleged failure of the officers to act, that led to his current and prior losses of freedom.

There are two recognized exceptions to this rule. First, government actors may be liable "when the State takes a person into its custody and holds him there against his will." *DeShaney*, 489 U.S. at 199-200. Because of the creation of a "special relationship," the government has a constitutional "duty to assume some responsibility for [the] safety and general well-being" of that individual. *Id.* at 200. Here, however, Mr. Reed was not in the physical custody of Officers Montgomery and Rayez. His supervised release "was not an "'incarceration, institutionalization, or other similar restraint of personal liberty—which is the 'deprivation of liberty' triggering the protections of the Due Process Clause.'" *Taylor v. Garwood*, 98 F. Supp. 2d 672, 677 (E.D. Pa. 2000) (quoting *DeShaney*, 489 U.S. at 200) (concluding that federal probationer could not hold his probation officer liable under the special relationship theory). Accordingly, Mr. Reed cannot hold Officers Montgomery and Rayez liable under the special relationship theory.

Second, the "state-created danger" theory creates liability when the government "affirmatively acted to create plaintiff's danger, or to render him or her more vulnerable to it." *D.R.*, 972 F.2d at 1373; *see also Kneipp v. Tedder*, 95 F.3d 1199 (3d Cir. 1996). Constitutional liability for a state-created danger can be found if:

> (1) the harm ultimately caused was foreseeable and fairly direct; (2) the state actor acted in willful disregard for the safety of the plaintiff; (3) there existed some relationship between the state and plaintiff; [and] (4) the state actors used their authority to create an opportunity that otherwise would not have existed for the [harm] to occur.

*Kneipp*, 95 F.3d at 1208 (quoting *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1152 (3d Cir. 1995)). Liability under this theory, however, "is predicated upon the states' *affirmative acts* which work to the plaintiff's detriment in terms of exposure to danger." *D.R.*, 972 F.2d at 1374 (emphasis added). Therefore, [i]t is a misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause." *Bright v. Westmoreland Cty.*, 443 F.3d 276, 282 (3d Cir. 2006). Nothing in Mr. Reed's Complaint, however, alleges that Officers Montgomery and Rayez misused their authority in willful disregard for his safety. Rather, Mr. Reed blames the officers for failing to act to ensure that he did not commit further crimes. Accordingly, Mr. Reed cannot hold Officers Montgomery and Rayez liable under the state-created danger theory.

## IV. CONCLUSION

For the foregoing reasons, the Court will dismiss Mr. Reed's Complaint for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Mr. Reed will not be permitted to file an amended complaint in this matter because amendment would be futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 112-13 (3d Cir. 2002). An appropriate Order follows, which shall be docketed separately.

**BY THE COURT:**

*/s/ Joseph F. Leeson, Jr.*
**JOSEPH F. LEESON, JR.**
**United States District Judge**